# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

```
THE TRAVELERS INDEMNITY      )
COMPANY,                     )
                             )
     Plaintiff,              )
                             )
     v.                      )       5:20-CV-120
                             )
RUSSELL PALLOTTA,            )
                             )
     Defendant.              )
```

## ORDER

This declaratory judgment action is before the Court on Plaintiff Travelers Indemnity Company's motion for summary judgment. Dkt. No. 25. For the reasons given below, the motion is **GRANTED**.

## BACKGROUND

The underlying facts here are undisputed.[1] In May 2018, Defendant Russell Pallotta was injured in a car accident. Dkt. No.

---

[1] Pallotta's response to Traveler's statement of material facts purports to lack "sufficient information to either confirm or deny" seventeen of the twenty-two enumerated "facts." See Dkt. No. 29-1 ¶¶ 1-17. It is sometimes permissible to respond to allegations in a complaint that way, see Fed. R. Civ. P. 8(b)(5), but not to a statement of material facts. The Federal Rules of Civil Procedure make clear that "[a] party asserting that a fact . . . is genuinely disputed must *support* [that] assertion by: (A) citing to particular parts of material in the record . . . , or (B) showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). So too, the Local Rules emphasize that "[a]ll material facts set forth in the statement

25-2 ¶ 18.[2] The parties' submissions are light on details, but they agree that Pallotta was riding in a vehicle owned and operated by the City of Waycross (the "City") when it collided with an unknown driver. Id. ¶ 18. Pallotta was injured in the accident. Id. ¶ 19.

Pallotta sought insurance benefits from the City's insurance company, Travelers Indemnity Company. Id. ¶ 20. Travelers denied the claim because, according to it, the policy did not contain any Uninsured Motorist ("UM") coverage. Id. ¶ 21. As relevant here, UM Coverage "provides that the applicable limits of liability are available to cover any damages an insured suffers which exceed the tortfeasor's policy limits." See, e.g., Allstate Fire & Cas. Ins. Co. v. Rothman, 774 S.E.2d 735, 737 (Ga. Ct. App. 2015) (citing O.C.G.A. § 33-7-11(b)(1)(D)(ii)(I)); see also Frank E. Jenkins &

---

. . . will be deemed to be admitted unless controverted by a statement served by the opposing party." LR. 56.1; cf. Fed. R. Civ. P 56(e). At this stage of the case, Plaintiff essentially concedes that facts are undisputed when he informs the Court that he "lacks information" to dispute them. So, since Pallotta fails to offer substantive, record-based responses to the first seventeen facts, they are deemed admitted. Wilson v. Suntrust Bank, Inc., No. 2:20-CV-20, 2021 WL 2525585, at *1 n.4 (S.D. Ga. Apr. 9, 2021) ("For all . . . responses in which Plaintiff simply states 'Denied' without citation to the record, the Court deems the corresponding statement of fact as admitted."). The remaining five facts, numbers 18 through 22, are expressly "not den[ied]," dkt. no. 29-1, so those are deemed admitted as well.

[2] Because Pallotta has effectively admitted all twenty-two of Traveler's statements of material fact, but does not quote or reproduce those statements, dkt. no. 29-1, this order refers to Traveler's statement of material facts itself, dkt. no. 25-2, rather than Pallotta's response.

Wallace Miller III, Ga. Automobile Ins. Law § 39B:1 (2021-2022 ed.) (same).

A few months after Travelers denied Pallotta's claim for UM coverage, Pallotta sued the unknown driver in the State Court of Bacon County, seeking damages for his injuries. Dkt. No. 25-2 ¶ 22 (referencing Civil Action Number STSV2020000011, dkt. no. 7-1).

That prompted this lawsuit. Travelers seeks a declaratory judgment that it "has no obligation to indemnify [Pallotta] . . . for [his] uninsured motorist claims" related to the suit against the unknown driver. Dkt. No. 7 ¶ 1. The core question here is whether Travelers obtained a valid "rejection" of UM coverage. That question matters because, without a written rejection of UM Coverage, Georgia law requires auto-liability policies to provide UM coverage. O.C.G.A. § 33-7-11(a)(1), (3).[3] If that argument fails, Travelers "seeks reformation of the insurance policy" to reflect the parties' intent to exclude UM coverage "due to mutual mistake." Id.

Here too, the relevant facts are undisputed. In April 2017, a non-party insurance agency called "Apex," acting on the City's behalf, requested a policy quote from Travelers. Dkt. No. 25-2

---

[3] The parties appear to assume that, absent a valid rejection, O.C.G.A. § 33-7-11(a)(1) inserts UM coverage into Georgia insurance contracts as a matter of law. Because Travelers obtained a valid rejection in writing, in any event, the Court assumes the parties' view without deciding it is correct.

3

¶¶ 5-6. Declarations from City officials indicate that "[i]t was always the City's intent to reject uninsured motorist coverage[.]" Dkt. No. 25-2 at 93-94 ¶ 4; see also dkt. no. 25-2 ¶ 7 (indicating the City had sought a policy without UM coverage in 2016-2017, as well). Travelers responded with an insurance proposal, including a grid classifying "Uninsured/Underinsured Motorist" coverage as "Rejected." Id. ¶ 8-9 (citing Dkt. No. 25-2 at 13-59 (email and agreement), 48 (UM provision)). Apex accepted the policy proposal on behalf of the City by email, attaching the policy proposal. Id. ¶¶ 14-15 (citing Dkt. No. 25-2 at 13-59).

## LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" where the evidence would allow "a reasonable jury to return a verdict for the nonmoving party." FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" only if it "might affect the outcome of the suit under the governing law." Id. (quoting Anderson, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp.

4

v. Catrett, 477 U.S. 317, 323 (1986).  The movant must show the court that there is an absence of evidence to support the nonmoving party's case.  See id. at 325.

If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. See Anderson, 477 U.S. at 257. The nonmovant may satisfy this burden in one of two ways.  First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117.

Where the nonmovant attempts to carry this burden with nothing more "than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

Finally, "[w]here, as in this case, there is no real dispute concerning any facts . . . the issue is only a question of law." Ace Am. Ins. Co. v. Townsend, No. CV 409-101, 2011 WL 3348378 at *2 (S.D. Ga. March 11, 2011) (citing United States v. Oakley, 744 F.2d 1553, 1555-56 (11th Cir. 1984)).

## DISCUSSION

Georgia law generally requires auto insurance policies to provide uninsured motorist coverage, O.C.G.A. § 33-7-11(a)(1), but that coverage can be waived if the insured person "reject[s] the coverage in writing," id. § (a)(3). That last portion—the writing requirement—is the issue here. Travelers argues that Apex's email asking Travelers to bind coverage satisfies the writing requirement, pointing out that the email expressly requests coverage "per the dated proposal of 6/23/2017." Dkt. No 33 at 4-5 (citing dkt. no. 25-2 at 13). Pallotta, of course, disagrees. Dkt. No. 29 at 3-4. Pallotta acknowledges an email could potentially satisfy the writing requirement but insists that the email exchange here is not enough. Id. As he sees it, the City did not reject UM coverage "in writing" because the email itself does not contain an explicit rejection of, or even direct reference to, UM coverage.[4]

---

[4] Pallotta also suggests, albeit in passing, that (1) "[t]here is no evidence that any representative of the City chose to select or reject UM coverage," and (2) the declarations in the record do not say that this is a normal way of rejecting UM coverage. Dkt. No. 29 at 5-6. But neither of those submissions bear on whether the

6

Id. But the statute says that the rejection must be "in writing"—not a particular form of writing, or even a single writing. O.C.G.A. § 33-7-11(a)(3).

The analysis here starts with two obvious facts: *First*, the policy proposal clearly shows that UM coverage is "rejected," dkt. no. 25-2 at 48; and *second*, both the email and the proposed policy are "in writing," dkt. no. 25-2 at 13-59. See Ace Am., 2011 WL 3348378 at *3 ("[A]ll parties agree [that the proposal] contained a rejection of UM coverage.").

Those undisputed facts do most of the work here, because the Georgia Court of Appeals has held that "[t]he rejection of uninsured motorist coverage in a written application" for insurance, at least when it is signed by the party seeking insurance, "is sufficient to comply with [the writing requirement.]" Am. Liberty Ins. Co. v. Sanders, 169 S.E.2d 342, 344 (Ga. Ct. App. 1969) (interpreting identical language in a prior version of the statute). And this Court has come to the same conclusion even where the writing is a mere proposal, as opposed to an actual application. Ace Am., 2011 WL 3348378 at *3 ("[T]he focus [is] less on the name of the document and more on the purpose

---

writing, itself, satisfies the statute. Moreover, the first argument is belied by the undisputed record, in any event. Dkt. No. 25-2 ¶¶ 7 ("[T]he City sought a policy without UM coverage[.]").

7

of the document."). So since the policy proposal here clearly "reject[s]" UM coverage, dkt. no. 25-2 at 48, it would suffice to reject coverage if the City (through its agent) had signed and returned it to Travelers. Am. Liberty, 169 S.E.2d at 344; Ace Am., 2011 WL 3348378 at *3.

The email asking Travelers to bind coverage under the agreement serves essentially the same function. Like a signature on the proposal itself, the email confirmation "was made for the purpose of inducing [Travelers] to issue a policy." Ace Am., 2011 WL 3348378 at *3. What policy was Travelers supposed to issue? The one attached to the email confirming coverage, with "[a]ll [t]erms and [c]onditions per the dated proposal of 6/23/2017." Dkt. No. 25-2 at 13. There is no dispute that this policy "rejected" UM coverage, id. at 48, so the only sound conclusion is that the email—like the signature on an application for insurance—confirmed the City's choice to "reject the coverage in writing." O.C.G.A. § 33-7-11(a)(3).

Per American Liberty, "[the] contention that . . . [some] separate instrument of rejection [is] required" is "without merit." 169 S.E.2d at 344; see id. ("Having made the rejection in the written application . . . a further rejection, either before or after issuance of the policy[,] would have been a useless thing," and "neither the statute nor any decision construing it

8

requires" a separate rejection.). The statute requires only that the insured reject coverage in writing. See Ga. Farm Bureau Mut. Ins. Co. v. North, 714 S.E.2d 428, 431 (Ga. Ct. App. 2011) ("[I]t is for the legislature[,] and not this Court[,] to further specify how these requirements are to be met.").

Putting all that together, the conclusion must be that the writing requirement is satisfied by an email confirming a coverage request under a written proposal which clearly rejects UM coverage.

Resisting that conclusion, Pallotta insists that the facts of many of these prior cases show "some selection, or attempt at selection, with regard to UM coverage as a separate prerequisite[.]" Dkt. No. 29 at 5. But again: the statute does not call for that—it requires only a written rejection of UM coverage. Pallotta points to no authority holding that the written rejection must include "yes" or "no" boxes. So while a proposal or application which simply fails to mention UM coverage would not be sufficient to reject it, O.C.G.A. § 33-7-11(a)(3), and an insurer cannot misinform the applicant about the conditions of UM coverage instead of obtaining a partial rejection of coverage, a rejection, Ga. Farm Bureau, 714 S.E.2d at 431-32, "there are no formal, statutory requirements . . . governing how and in what manner the insurer must offer the available options for [UM] coverage, beyond

9

requiring that rejections must be in writing," id. at 431. Thus, Pallotta offers no reason why the written email here—which confirms a request for coverage pursuant to a policy that clearly rejects UM coverage—does not satisfy the statute.

## CONCLUSION

Because Travelers obtained a written rejection of UM coverage, its motion for summary judgment, dkt. no. 25, is **GRANTED**. The Court, therefore, need not decide Travelers' alternative argument that the contract should be reformed to match the parties' intent. The Clerk is **DIRECTED** to **CLOSE** this case.

**SO ORDERED** this 7th day of December, 2021.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA